FILED

20 OCT 17 P 12: 04

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANN PISCOTTANO | : | CIVIL ACTION NO. |
| Plaintiff | : | 3:01cv 1311 (CFD) |
| | : | |
| VS. | : | |
| | : | |
| TOWN OF SOMERS, GORDON | : | |
| J. MELLO, CONRAD | : | |
| MCINTIRE, JR | : | |
| Defendants | : | OCTOBER 17, 2003 |

## LOCAL RULE 9(c)2 STATEMENT

Pursuant to Local Rule 9(c), the Plaintiff submits the following answer

in opposition to Defendant's Rule 9(c) Statement.

1.    Admitted

2.    Admitted

3.    Admitted

4.    Admitted

5.    Admitted

6.    Admitted

7.    Admitted

8.    Admitted

9.    Admitted

10.    Admitted

11.    Admitted

12.    Admitted

13.    Admitted

14.    Admitted

15.    Admitted

16.    Admitted

17.    Admitted

18.    Denied.  See transcript of 5/21/02 Meeting of Board of Selectmen.

       Attached as Exhibit A.

19.    Admitted

20.    Denied.  See Deposition of Gordon Mello, p. 5.  Attached as Exhibit

       B.

21.    Admitted

22.    Admitted

23.    Admitted

24.    Admitted

25.    Admitted

26.    Admitted

27.    Admitted

28.    Admitted

29.     Admitted

30.     Admitted

31.     Denied.  See Affidavit of Plaintiff.  Attached as Exhibit C.

32.     Admitted. (sic)

33.     Denied.  See Affidavit of Plaintiff.  Attached as Exhibit C.

34.     Admitted

35.     Admitted

36.     Admitted

37.     Denied.  See Affidavit of Plaintiff.  Attached as Exhibit C.

38.     Denied.  See Affidavit of Plaintiff.  Attached as Exhibit C.

39.     Admitted

40.     Admitted

41.     Admitted

42.     Denied.  See Affidavit of Plaintiff.  Attached as Exhibit C.

43.     Denied.  See Affidavit of Plaintiff.  Attached as Exhibit C.

44.     Admitted

45.     Admitted

46.     Admitted

47.     Admitted

48.     Admitted

49.    Admitted

50.    Admitted

51.    Admitted

52.    Admitted

53.    Admitted

54.    Admitted

55.    Admitted

56.    Admitted

THE PLAINTIFF

By_____
Michael P. Farrell
Attorney At Law
201 Center Street
West Haven, CT  06516
(203) 934-8638
Federal Bar #CT 00169

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed this date via first class mail, postage prepaid, to:

James P. Mooney, Esq.
Law Office of Kelly & Mooney
2452 Black Rock Turnpike
Fairfield, CT  06432

Michael P. Farrell
201 Center Street
West Haven, CT 06516
Tel. No. (203) 934 8638
Federal Bar #CT 00169

5

Exhibits A-F

**DEFENDANT'S EXHIBIT**
**NO. 2** 11/22/02

EXCERPT OF MINUTES FROM
BOARD OF SELECTMEN MEETING
MAY 21, 2001

Tape begins with discussion from the Fire Department Building Chairman. This transcript begins with the audience comments.

<u>AUDIENCE COMMENTS:</u>

<u>Mr. Mello:</u>     Next item, audience comments.  Ms. Piscottano.

<u>Ms. Piscottano</u>: Thank you, Mr. Mello. (Inaudible)  -- Somers and I've been a resident here for about three years.  I have a handout here if you'll allow me to give it to the Selectmen.

<u>Mr. Mello:</u>     It depends on what the topic is.

<u>Ms. Piscottano:</u>        Well, I did—this is audience comments. I'm not here to debate anything.  I'm here to bring out the facts.  I did request in a letter to you on May 10th that I be placed on tonight's agenda.  You denied that to me and I would also like to publicly say that I took offense with  your comment to me in the hallway of the town hall to take my political Bs elsewhere.  I am a constituent of yours,  I am a taxpayer in the town of Somers, I--

<u>Mr.. Mello:</u>     If this is about--   if this is about a union position., you can stop talking right now and return to your seat.  There will be no discussion, no dialogue, no talking, no comments about a person who belongs to a union--

<u>Ms. Piscottano:</u> Okay, I--  I would respectfully ask the other two selectmen--

<u>Mr. Mello:</u> There will be none.  I am--  I am the Chairman of this board.  I recognize people and I recognize their questions for discussion.

<u>Ms. Piscottano:</u>  Okay, Mr. Mello, I would then like to say I have a letter from you stating that you have done a thorough investigation of this matter.  Apparently you haven't and if I need to go to the state with this matter with the information which I have been able to obtain--

<u>Mr. Mello:</u>  That is your choice, ma'am--

<u>Ms. Piscottano:</u>--I will do so--

<u>Mr. Mello:</u> --that is your choice--

Ms. Piscottano:  Again, I would respectfully ask the other selectmen to add me to tonight's agenda—

Mr. Mello:  --they do not have the authority to add you to any agenda—

Mr. Jackson:  --under what--

Mr. Roland:--since when--

Mr. Mello:  --since you are not the Chair. I recognize motions.

Mr. Roland:  --You don't-- I'm sorry. You haven't been elected king.

Mr. Mello:  --that's-- that's totally irrelevant.  We will not get into more union trouble-- this is not open for debate or dialogue.

Mr. Jackson:  Well, I think as long as we don't debate and the-- and a citizen wants to make a comment--

Mr. Mello:  --she's already made her comment.  She's already made her comment. As far as I'm concerned--

Mr. Jackson:  --no, she did not--  she did not make her comment--

Ms. Piscottano:  --Mr. Mello, I (inaudible), I'm a taxpayer--

Mr. Mello:  --this meeting is in recess--  this meeting is in recess for fifteen minutes.

Ms. Piscottano:  --I'm a taxpayer.  I'm allowed to speak my comments since I prepared them.

Mr. Mello:  --the meeting's in recess.

Ms. Piscottano:  --that's fine.  I can wait as well as everyone else in the room.

(At this time, Mr. Mello left the room.  Tape was left on.)

Mr. Roland:  I don't know what this is all about.  I don't know if you can call a recess without asking for a second or third.  But I think we ought to talk to the attorney about two issues.   Since I don't want to go out on extreme grounds.  I've never seen action like this before. So we'll wait fifteen minutes.  I don't believe one member of a board of selectmen can call a recess-- possibly he can.                         ,

Mr. Jackson:  I--  I'm

Mr. Roland (continuing)--We're in recess so we're just having a discussion -- I don't even know if this is (inaudible)

Ms. Piscottano: --(inaudible)

Mr. Jackson: I'm-- I'm more—

Mr. Roland: You should-- You should sit back down and--

Ms. Piscottano: I should sit back there and-- (inaudible)

At this time, more than one person was talking.

Mr. Jackson: I'm more concerned that (inaudible) comment—

Mr. Roland: We can-- we can and I'll make a motion to add it to the agenda tonight and you can make a second and he can go from there.

And under audience participation we're-- we're allowed to entertain any discussion that any citizen wishes to present whether it be issues of the day relative to (inaudible) or anything else. We've always done that-- where are the reporters when you need them most.

Background noise – (inaudible)

Mr. Roland: Well what we'll do is-- I'll make an issue—we'll make an issue when he comes back. We'll open it up to citizens' comments and (inaudible) citizen comments. Then I'll make a motion to add it to the agenda and we can add it to the agenda and we can discuss it.

Mr. Jackson: (inaudible) chance to--

Mr. Roland: We're not going to stifle debate of any kind. The animal control officer-- we don't stifle the animal control officer-- and the person is right there—

Background mumbling

Mr. Jackson: We obviously apologize. We're as baffled as you are.

Mr. Roland: I can assure you I'll be talking to the town attorney tomorrow to verify that Robert's rules of order have been followed in a public meeting and the question of the day is whether the Chairman of a commission has the right to control an agenda without a motion to amend to-- I will make a motion to amend the agenda as I have for ten years—you can second and we'll add it to the agenda.

Mr. Jackson: All right..

Background noise (inaudible)

<u>Mr. Roland</u>:  Sit down here if you'd like-- do you have the tape recorder on?

<u>Secretary</u>:  I am taping.

<u>Mr. Roland</u>:  It's being taped right now?  As I will request a copy of that-- if I may—legal purposes.  I'd like to have this one running too, but I want to have a copy of (inaudible) tonight for legal purposes.

<u>Mr. Mello</u>:  The meeting is back in session.  Are there any further audience comments? I've already recognized you, Ms. Piscottano.

<u>Ms. Piscottano</u>:  I was not allowed to speak though-

<u>Mr. Mello</u>:  Are there any other comments?

<u>Audience member</u>:  I have one.

<u>Mr. Mello</u>:  Yes, ma'am.

<u>Ms. Stevenson</u>:    I'm backing up Carol Pyne.  We've been after a fire alarm system at the museum. We have probably some of the most valuable collection of records in the town and we have no fire alarm system.  She's presented the  proposal to you several times I believe.

<u>Mr. Mello</u>:  That's correct.

<u>Ms. Stevenson</u>:  And I think it's really imperative that that stuff be protected.

<u>Mr. Mello</u>:  And we agree with you.  We're just waiting to see how the budget shakes out and see if there is any dollars left to get the system installed.

<u>Ms. Stevenson</u>:  Well, please keep that in mind.

<u>Mr. Jackson</u>:  I thought we agreed to have it tonight once we approved that $13,000—

<u>Mr. Mello</u>:  What $13,000?

<u>Mr. Jackson</u>:  Last week-- we said $13,000 for the tires or whatever it was.  And then we said if we could find that kind of money we ought to be able to find  the $1400 or we were going to have it for tonight.

Mr. Mello: I don't remember us agreeing on that tonight, but I'll-- but I'll make sure that I--it's kind of tight on some of the line items. We're just waiting to see what the electric bill is and that for this month. We utilized a lot of additional money this winter in overtime for snowplowing and that and believe me a lot of the line items are-- there are a minimum amount of dollars in there. We just want to make sure that we're not going to fall short, but I agree with you. We're going to get it done. I can assure you—it'll be done.

Ms. Stevenson: (inaudible)

Mr. Mello: That's okay. That's fine. Any other comments? Yes, Ms. Piscottano?

Ms. Piscottano: This is not a labor issue.

Mr. Mello: Yes, Ms. Piscottano.

Ms. Piscottano: I'm a little baffled, Mr. Mello by an article I read in the newspaper the other day saying that you have allowed Mr. Roulier to tap trees on town property and he'll be donating that money back to the Democratic town Committee?

Mr. Mello: I read that. That was news to me. So—

Ms. Piscottano: Is there any procedure before someone is allowed to run a business on town property? Do they need to compensate the town at all?

Mr. Mello: I haven't made a huge issue out of-- people have come and asked to utilize town property for different things. I don't want to get in a contest with people. Someone comes up with an idea and they go out and they do it. It's no different than the Republicans and the pig roast up there. So-- I mean. I think everyone is probably sharing in his largess, it appears to me. So-- And I have no control over comments or statements that other people make.

Ms. Piscottano: Well, being our selectman and that being town property, don't you think that it's a conflict of interest that he thinking of donating money back to the political party--

Mr. Mello: You'll have to ask him. I can't answer for him. I don't know what he's thinking. I can't speak for him. So I would suggest that you contact Mr. Roulier.

Ms. Piscottano: I will. Thank you.

Mr. Mello: Anyone else?

Mr. Roland: Before we move from citizen comments, I would like the record to show that I would like to request a copy of tonight's tape, a verbatim copy of tonight's tape, and I would like to question as a matter of public record and I would like to look into that

with our town attorney as to whether the Chairman of the board of selectman can unilaterally make decisions to stifle citizen comment, citizen debate as he wishes on a topic that he may not-- may or may not agree on.

Two, whether or not he can call a recess without a second. And three I make a motion that we add the concerns of citizens relative to the recreation director position-- add that to the agenda now--

Mr. Mello:  Meeting is in recess—

Mr. Roland:  Will you make a second, Dick—

Mr. Mello:  Meeting is in recess—

Mr. Roland:  Let the record show that we made a mo—

Mr. Mello:  Shut the—

TAPE OFF  AND THEN BACK ON

Unidentified citizen - I do respect that you have some point that you truly believe is accurate and correct . And I would just like to hear your point of view as to why Ms. Piscottano cannot share her information.  I would be more apt to understand why you're leaving the room, if you could clearly explain--  all you said to the public was we cannot discuss union personnel.

Mr. Mello:  Uh, hum.

Unidentified Citizen:  But I know we've discussed the animal control officer and I don't see—

Mr. Mello:  The animal control officer is not a union position.

Ms. Piscottano:  Okay.  And I know we've discussed Mr. Jekot's position regarding different legalities.    That was discussed a couple of weeks ago.  I would like you to explain to us why we can't discuss it and then we would be more understanding of what's going on.

Mr. Mello:  Because the union contract says so.  It's as simple as that.  There's nothing magical—

Unidentified citizen:  Okay, We've never discussed any,other union personnel?

Mr. Roland:  I don't believe the contract says that— I d like to see

6

Mr. Mello: We have to go into executive session. Here's the bottom line. This is a representative form of government. Legally we do not have to have any audience comments whatsoever at any of our meetings. The only time citizens are allowed to speak, legally, are at town meetings. So by allowing audience comment-- we don't have a problem with that, but I'm not going to get into a controversial dissertation with people because someone had the mistaken belief that someone has done something wrong. Okay. I will say this that the situation has been thoroughly investigated, okay, and there is no problem. There will be a problem okay if people persist down this path as we have had to pay for in the past. Okay. So I am trying to save this town unnecessary expenditures, okay. And if someone has, or believes that they have-- found someone where there is some type of an infraction or they have broken the law, then you be my guest-- you go see the state's attorneys general and you proceed from there. It's as simple as that.

Mr. Roland: I am going to respond again in a minute because a citizen came to a duly recognized board or commission in this town, presented their concerns in an open forum to said commission, i.e., the recreation commission. The recreation commission of which some members are here tonight, and in the minutes, the formal minutes of their meeting, recommended that that citizen take that concern-- those concerns to the board of selectmen for an answer. Or direction--

Mr. Mello: I believe it said the First Selectman--

Mr. Roland:--now you, the Chairman, are denying a citizen the right to present their concerns to us and you are assuming it has some sort of ramifications on union issues.

Mr. Mello: It says, First Selectman, Phil, if you read the meeting minutes.

Mr. Roland: Pardon me?

Mr. Jackson: May I just—

Mr. Mello: It says, First Selectman, in the recreation's meeting minutes

Mr. Roland: So basically you're position tonight is--    you as the First Selectman are deciding what you will entertain from the floor.

Mr. Mello: I told you I am not going to get into discussing a union contract.

Mr. Roland: Well, yes, you are—

Mr. Mello: Well, yeah, because you're forcing the issue. And I'm not going to discuss it any more.

Mr. Roland: I'm going to make a motion to add the concerns of the citizens--

Mr. Mello: We'll go into recess--   we're in recess—

RECESS
TAPE OFF

<u>Mr. Mello</u>:  Any other further audience comments?  Yes, Ms. Piscottano.

<u>Ms. Piscottano</u>:  I again respectfully ask that I be allowed to present the material I have to the Board of Selectmen regarding my written request to you which was denied me.

<u>Mr. Mello</u>:  Does anyone else have a question—

<u>Ms. Piscottano</u>:  (inaudible)  I at least expect an answer.

<u>Mr. Mello</u>:  I am not pursuing it any further.  I am the Chair of this meeting.  I will tell you what's going to happen and what's not going to happen.  Does anyone else have a question?

<u>Mr. Mello</u>:  Hearing none.

<u>Mr. Roland</u>:  I will make a motion to amend the agenda—

<u>Mr. Mello</u>:  This meeting is in recess--  meeting's in recess.

<u>Mr. Roland</u>:  Would you second-- for the record?

<u>Mr. Jackson</u>:  Second

BREAK HERE

<u>Mr. Mello</u>:  I'm not going to entertain recognizing that—  anymore comments?  Anymore comments?

<u>Mr. Jackson</u>:  Why? Why?

<u>Mr. Mello</u>:  Anymore comments?

<u>Mr. Jackson</u>:  Why?

<u>Mr. Mello</u>:  You've had your chance, Ms. Piscattano.

<u>Mr. Jackson</u>:  I'm making a motion that we go into Executive session—  that the labor attorney be called because—

(More than one person talking at same time.  Inaudible)

<u>Mr. Mello</u>:  Any more comments?  This meeting is in recess until tomorrow evening at 7:00 o'clock.  This meeting's in--    TAPE OFF

NO FURTHER RECORDING ON THIS TAPE.

I CERTIFY THAT THE ABOVE TRANSCRIPT IS ACCURATE AND CORRECT TO THE BEST OF MY ABILITY.  THIS TRANSCRIPT WAS PREPARED FROM THE TAPE FILED IN MY OFFICE ON MAY 22, 2001.

Claire L. Walker, Town Clerk

Date:  July 26, 2001

1

1           UNITED STATES DISTRICT COURT

2              DISTRICT OF CONNECTICUT

3

4

    * * * * * * * * * * * *

5

ANN PISCOTANNO,        *

6           Plaintiff,

                       *        Civil Action

7           vs.                 No. 3:01CV1311 (CFD)

                       *        February 28, 2002

8  TOWN OF SOMERS, GORDON

   J. MELLO, CONRAD      *

9  McINTIRE, JR.,

            Defendants. *

10

    * * * * * * * * * * * *

11

              DEPOSITION OF GORDON J. MELLO

12

   Appearances:

13

           FOR THE PLAINTIFF:

14

               MICHAEL P. FARRELL, ESQ.

15             201 Center Street

               West Haven, Connecticut   06516

16

   FOR THE DEFENDANTS:

17

               LAW OFFICE OF KELLY & MOONEY

18             2452 Black Rock Turnpike

               Fairfield, Connecticut  06432

19               By:  James P. Mooney, Esq.

20   ALSO PRESENT:

21             Ann Piscotanno

               Conrad McIntire, Jr.

22

23

24

                  POST REPORTING SERVICE

          Hamden, Connecticut   (800)262-4102

2

1              . . . Deposition of GORDON J. MELLO,

2     taken on behalf of the Plaintiff in the above-entitled

3     cause, wherein Ann Piscotanno is Plaintiff and the

4     Town of Sommers, et al., are Defendants, pending in

5     the United States District Court, District of

6     Connecticut, pursuant to Notice, before Barbara E.

7     Voss, a Notary Public in and for the State of

8     Connecticut, County of Fairfield, held on February 28,

9     2002, at 12:10 o'clock p.m., at the office of Michael

10    P. Farrell, 201 Center Street, West Haven,

11    Connecticut, at which time the parties were

12    represented as hereinbefore set forth. . .

13

14                    STIPULATIONS

15              All objections, except as to form, are

16    reserved for the trial.

17              The reading and signing of the

18    deposition are waived.

19              Formalities as to notice and proof of

20    the authority of the Notary Public are waived.

21

22

23

24

5

DEPOSITION OF GORDON J. MELLO
February 28, 2002

1    First Selectman, did the Town of Somers have a charter

2    that it operated under?

3        A    Yes.

4        Q    And for what -- to the best of your

5    knowledge, what period of time was that charter in

6    effect?

7        A    I believe that one was approved in 1966.

8        Q    As part of that charter, or under any other

9    rules, how often, during the period of time that you

10   were the First Selectman, was there a meeting of the

11   Board of Selectmen?

12       A    We had a meeting every two weeks --

13       Q    And --

14       A    -- on a Monday evening.

15       Q    And was the meeting that was held operated

16   under any particular set of rules or regulations?

17       A    Robert's Rules.

18       Q    Was there any posted rules or regulations

19   for the conduct of those meetings?

20       A    No.

21       Q    Was there a procedure or a policy that had

22   to do with public speaking at those meetings?

23       A    No.

24       Q    Who would preside at those meetings?

DEPOSITION OF GORDON J. MELLO
February 28, 2002

CERTIFICATE

STATE OF CONNECTICUT)
                     )  ss.
COUNTY OF NEW HAVEN )

I, Barbara E. Voss, a Notary Public duly commissioned and qualified in and for the State of Connecticut, do hereby certify that the foregoing record is a correct and verbatim transcript of the proceeding hereinbefore set forth.

I further certify that I am neither attorney or counsel for, nor related to or employed by any of the parties to the action in which this proceeding is taken; and further that I am not a relative or employee of any attorney or counsel employed by the parties thereto, or financially interested in the action.

In witness whereof I have hereunto set my hand and affixed my notarial seal this 22nd day of March, 2002.

_____
Barbara E. Voss, CSR No. 00194
Notary Public

My commission expires March 31, 2007.

POST REPORTING SERVICE
Hamden, Connecticut   (800)262-4102

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

ANN PISCOTTANO        :       CIVIL ACTION NO.
        Plaintiff        :       3:01cv 1311 (CFD)
                   :
VS.        :
                   :
TOWN OF SOMERS, GORDON :
J. MELLO, CONRAD        :
MCINTIRE, JR        :
        Defendants        :       OCTOBER 17, 2003

## AFFIDAVIT

STATE OF CONNECTICUT)
                  )        ss: West Haven, October 17, 2003
COUNTY OF NEW HAVEN)

The undersigned, of lawful age, being duly sworn, deposes and says:

1.      I am ANN PISCOTTANO, Plaintiff in the above-captioned matter;

2.      When I attended the meeting of May, 21, 2001 I wanted to bring issues

concerning use of town time for personal business by Conrad McIntire,

Recreation Director,  to the attention of the Board of Selectmen.  While I

realized they could not discuss a Union Matter, I expected I could speak or

comment to the Board, without a dialogue.

3.     I believe the Board of Selectmen could have continued the meeting because it requires a Motion to Adjourn, which was not done.

4.     Prior to the meeting of May 21, 2001, I requested in writing, to the Defendant Mello, to be included in the agenda of the meeting.  Because the subject (Conrad McIntire) was a member of the bargaining unit, I requested he be given notice.  See Plaintiff's Exhibit D, attached.

5.     Prior to the May 21, 2001 meeting, the Defendant Mello stated to me, "take your political bullshit elsewhere."

6.     Prior to my attempting to speak on May 21, 2001, I brought the issues to a meeting of the Recreation Commission, where I <u>was</u> allowed to speak, and was told I should bring the issue to the attention of the Board of Selectmen.

7.     The agenda of the Board of Selectmen meeting for May 21, 2001, included a section for "audience comments".  See attached agenda as Exhibit G.

8.    In June 2001, I was sued in State Court by Conrad McIntire.  See

newspaper article attached as Exhibit E, and cover sheet, Civil Summons as

Exhibit F.

_____
ANN PISCOTTANO

Personally Appeared Ann Piscottano, Signer(s) and Sealer(s) of the
foregoing Instrument, and acknowledged the same to be her free act and deed
before me.

_____
Michael P. Farrell
Commissioner of the Superior Court

EXHIBIT
2
5/20/02

Mr. Gordon Mello, First Selectman
Town of Somers
600 Main Street
Somers, Ct. 06071

May 10, 2001

Dear Mr. Mello,

On May 7, 2001 I attended a meeting of the Recreation Commission to discuss concerns that I have regarding Mr. Conrad McIntire, Jr., Director, Somers Recreation Department and what I consider to be a conflict of interest. After discussing my concerns it was recommended that I bring it to the Board of Selectmen, as the Recreation Commission felt that personnel issues are the responsibility of the Board of Selectmen. I therefore request "that conflict of interest – Recreation Director" is added to the Selectmen's agenda for May 21, 2001, and that I be provided the opportunity to discuss the issue with the Board. I have reviewed Mr. McIntire's contract and believe he should be given the opportunity to be present at that meeting if he so chooses. Please notify Mr. McIntire of this agenda item.

Thank you for your time and consideration in this matter.

Sincerely,

Ann Piscottano

Cc: Richard Jackson, Selectman
    Philips Roland, Selectman
    Alan Walker, Chairman, Somers Recreation Commission

THE HARTFORD COURANT • SATURDAY, JUNE 16, 2001    B3

## TOWN NEWS

# hool Celebrates Blue Ribbon Award

## Precocious 10-Year-Old Stays Cool As VIP's Tour Guide

FF GOLDBERG
NT STAFF WRITER

Joseph Lieberman and
saw the future Friday,
Brewster Knowlton.
nator and the U.S. repre-
vasn't "Meet the Press."

### OMERS

recocious.
year-old fifth grader at
tary School, was just
yone who attended Fri-
a of the school's Blue
for excellence roasted
ng sun, Brewster stayed
ur guide for his VIP

it honor to meet them."
Not many people get to

do that."

Not many schools receive Blue Rib-
bon distinction. Somers was one of four
in the state and 223 in the nation to be
recognized this year by the U.S. Depart-
ment of Education, which began the
Blue Ribbon program in 1982.

"I'm really proud of you," Lieber-
man, D-Conn., told the fifth-grade class
under a large tent behind the school.
"Now you're in a very small number of
the very best in our country."

After making brief remarks, which in-
cluded references to the education bill
passed Thursday by the Senate, Lieber-
man took questions from the students,
including one from the granddaughter of
an old friend.

Mackenzie Vita, 10, asked Lieberman
if he remembered Bob Houley, a former

state senator.

"Of course I do," Lieberman said. "He
was one of the best. You're his grand-
daughter? You're better looking than he
was."

Later in the afternoon, Johnson, R-6th
District, addressed the student body and
parent volunteers in a formal ceremony.

"Something like this doesn't just hap-
pen," Johnson said. "It happens because
when you come here, you come here to
be part of a team that does something.
And that something is to learn and to
treat each other well."

Somers co-principal Thomas A. Chil-
icki said Lieberman and Johnson's pres-
ence spoke to their commitment to edu-
cation.

"It shows they really care," Chilicki

said. "Not just for Blue Ribbon schools,
but for all the schools in the United
States. They truly spoke about education
to the kids, and how important it is."

Chilicki said he was most proud of the
fifth-graders, who are the first to com-
plete their entire elementary education
at the school since 1995, when it became a
pre-kindergarten through fifth-grade
school.

"They have really led the way for the
kids," Chilicki said. "We ask our fifth
graders every year to be role models."

None more so than Brewster, a mem-
ber of the school's student council, who
said he wants to someday join the Cen-
tral Intelligence Agency, but wouldn't
rule out a future in politics.

Certainly, young Brewster has mas-

tered the art of bipartisanship, wearing a
Red Sox hat and Yankees shirt to school
on Friday.

"I like them both," he said.

And his media savvy is refined as well.
Brewster deftly shooed away a pair of
classmates who interrupted his im-
promptu press conference after
schmoozing with Lieberman.

"Hold on," he said. "I'm busy with The
Hartford Courant here."

But Chilicki said Brewster is as much
substance as he is style.

"He's a leader," Chilicki said. "We
form student committees to solve prob-
lems. Brewster is always there, volun-
teering solutions."

And tours.

"Actually, yesterday I toured two
teachers from Hamden," Brewster said
of his qualifications for Friday's big job.
"I've had touring experience."

### A GEM OF A DESSERT



# Recreation Chief Sues, Citing Harm To Reputation

## In Public Meeting, Republican Questioned Private Lessons Given During Weekday Hours

6-16-2001

By DON STACOM
COURANT STAFF WRITER

SOMERS — A dispute over Recre-
ation Director Conrad McIntire Jr.'s
job has led to a lawsuit against a mem-
ber of the Republican town committee.

### SOMERS

McIntire filed suit this week in Rock-
ville Superior Court, charging that his
reputation was harmed by Ann Piscot-
tano, who recently questioned whether
McIntire has taught private tennis les-
sons on town time.

McIntire and his attorney, James
Walker, could not be reached Friday.
Piscottano said she is hiring an at-
torney and would not comment on the
suit.

Piscottano's questions about McIn-
tire's work divided the board of select-
men last month, with Democratic First
Selectman Gordon J. Mello ultimately
walking out of a meeting to prevent her
from pursuing the matter publicly.
Mello said he feared that allowing her
to make public accusations against Mc-
Intire could violate the town's contract
provisions on handling personnel mat-
ters.

Mello's decision to abruptly end the
meeting drew complaints from Repub-

lican Selectmen Phillips H. Roland and
Richard H. Jackson III, who main-
tained that Piscottano had the right as
a private citizen to discuss the matter
during the selectmen's public meeting.

Mello has said that he has looked
into Piscottano's questions and con-
cluded that McIntire had no conflict of
interest in giving private lessons dur-
ing weekday hours. McIntire frequent-
ly performs town work on nights and
weekends without being paid over-
time, Mello noted.

It is not the first time that selectmen
were divided on partisan lines about
an issue involving McIntire.

Two years ago, the recreation com-
mission asked selectmen not to reap-
point McIntire to the part-time post of
municipal agent for the elderly, saying
those duties interfered with his ability
to do the recreation director's job. Mc-
Intire objected to losing the $2,700-a-
year municipal agent role, and said he
could handle both jobs. But in a 2-1
vote, Roland and Jackson ousted McIn-
tire from the municipal agent job.

At the time, Mello complained that
Roland and Jackson should have dis-
cussed the matter in closed-door ses-
sion. He also accused them of pursuing
political motives to drive McIntire out
of town employment. In turn, Roland
and Jackson accused Mello of playing
politics with the matter.

# Buckland Developers

# SUMMONS - CIVIL
(Except Family Actions)
JD-CV-1 Rev. 6-97
C.G.S. 51-346, 51-347, 51-349, 51-350, 52-45a
52-48, 52-259, P.B. Sec. 49, 63, 66

## SUPERIOR COURT

**"X" ONE OF THE FOLLOWING**
amount, legal interest or
property in demand, exclusive
of interest and costs is:

| | |
|---|---|
| ☐ | less than $2,500 |
| ☐ | $2,500 through $14,999.99 |
| ☒ | $15,000 or more |

("X" if applicable)
☐ Claiming other relief in
addition to or in lieu of
money or damages.

### INSTRUCTIONS
1. Prepare on typewriter, sign original summons and conform all copies of the summons.
2. Prepare or photocopy conformed summons for each defendant.
3. Attach the original summons to the original complaint, and attach a copy of the summons to each copy of the complaint. Also, if there are more than 2 plaintiffs or 4 defendants prepare form JD-CV-2 and attach it to the original and all copies of the complaint.
4. After service has been made by officer, file original papers and officer's return with the clerk of court.
5. The party recognized to pay costs must appear personally before the authority taking the recognizance.
6. Do not use this form for actions in which an attachment, garnishment or replevy is being sought. See Practice Book Section 49 for other exceptions.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint

**RETURN DATE**
7/17/01

| ☒ JUDICIAL DISTRICT ☐ HOUSING SESSION  ☐ GA NO. | AT (Town in which writ is returnable)(C.G.S. 51-346, 51-349) ROCKVILLE | CASE TYPE (From case type list–see back) Major **T** Minor **50** |
|---|---|---|

ADDRESS OF COURT CLERK WHERE WRIT AND OTHER PAPERS SHALL BE FILED (No., street, town and zip code)(C.G.S. 51-347, 51-350)
69 BROOKLYN STREET, ROCKVILLE CT 06066

TELEPHONE NUMBER

| PARTIES | NAME AND ADDRESS OF EACH PARTY (No., street, town and zip code) | NOTE: Individual's Names Last, First, Middle Initial     ☐ Form JD-CV2 attached | PTY NO |
|---|---|---|---|
| FIRST NAMED PLAINTIFF | CONRAD MCINTIRE, JR. 140 Webster Rd., Ellington, CT 06029 | | 01 |
| Additional Plaintiff | | | 02 |
| FIRST NAMED DEFENDANT | ANN PISCOTTANO 72 Root Rd., Somers, CT 06071 | | 50 |
| Additional Defendant | | | 51 |
| Additional Defendant | | | 52 |
| Additional Defendant | | | 53 |

### NOTICE TO EACH DEFENDANT
1. You are being sued.
2. This paper is a Summons in a lawsuit.
3. The Complaint attached to these papers states the claims that each Plaintiff is making against you in this lawsuit.
4. To respond to this Summons, or to be informed of further proceedings, you or your attorney must file a form called an "Appearance" with the Clerk of the above-named Court at the above Court address on or before the second day after the above Return Date.
5. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default.
6. The "Appearance" form may be obtained at the above Court address.
7. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately take the Summons and Complaint to your insurance representative.
8. If you have questions about the Summons and Complaint, you should consult an attorney promptly. The Clerk of Court is not permitted to give advice on legal questions.

| DATE 6/13/01 | SIGNED (Sign and "X" proper box) | ☒ Comm. of Superior Court ☐ Assistant Clerk | TYPE NAME OF PERSON SIGNING AT LEFT. JAMES WALKER |
|---|---|---|---|

## FOR THE PLAINTIFF(S) PLEASE ENTER THE APPEARANCE OF:

| NAME AND ADDRESS OF ATTORNEY, LAW FIRM OR PLAINTIFF IF PRO SE (No., street, town and zip code) | TELEPHONE NO. | JURIS NO. (If atty or law firm) |
|---|---|---|
| Diana Conti & Tunila, 1091 main St. Manchester, CT 06040 | 643-2181 | 21836 |

NAME AND RESIDENCE OF PERSON RECOGNIZED TO PROSECUTE IN THE AMOUNT OF $250 (No. street, town and zip)
Raymond A. Diana, 71 Branford St. Manchester, CT 06040

SIGNATURE OF PLAINTIFF IF PRO SE

| PLFS. 1 | # DEFS. 1 | # CNTS. 4 | SIGNED (Official taking recognizance; "x" proper box) | ☒ Comm. of Superior Court ☐ Assistant Clerk | For Court Use Only FILE DATE |
|---|---|---|---|---|---|

IF THIS SUMMONS IS SIGNED BY A CLERK:
a. The signing has been done so that the Plaintiff(s) will not be denied access to the court.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service thereof.

A TRUE COPY ATTEST
GREGORY L. WOODRUFF
STATE MARSHAL
TOLLAND COUNTY

| I hereby certify I have read and understand the | SIGNED (Pro Se Plaintiff) | DATE SIGNED | DOCKET NO. |
|---|---|---|---|

**TOWN OF SOMERS**
**BOARD OF SELECTMEN**
**REGULAR MEETING**
**MONDAY – MAY 21, 2001**
**7:00 P.M. – TOWN HALL**

**AGENDA**



CALL TO ORDER

MEMBERS PRESENT

PLEDGE OF ALLEGIANCE

FIREHOUSE BUILDING UPDATE – Doug Snowdon, Chairman

AUDIENCE COMMENTS

ANIMAL CONTROL Part-time POSITION

RESIGNATIONS:
1.  ZONING COMMISSION – Deborah Numrych – effective July 1, 2001
2.  ECONOMIC DEVELOPMENT – Beth A. Connor – effective immediately

TRANSFERS/APPROPRIATIONS

MEETINGS/SEMINARS

RESIDENT STATE TROOPER CONTRACT – July 1, 2001 - June 30, 2003

VOTING MACHINES

CORRESPONDENCE

AUDIENCE COMMENTS

TAX REFUNDS - None

EXECUTIVE SESSION – Union Negotiations Strategy

ADJOURNMENT