FILED

2003 OCT 17  P 12: 03

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANN PISCOTTANO | : | CIVIL ACTION NO. |
| Plaintiff | : | 3:01cv 1311 (CFD) |
| | : | |
| VS. | : | |
| | : | |
| TOWN OF SOMERS, GORDON | : | |
| J. MELLO, CONRAD | : | |
| MCINTIRE, JR | : | |
| Defendants | : | OCTOBER 17, 2003 |

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

### Introduction

The Plaintiff, ANN PISCOTTANO, is a resident of Somers, Connecticut. The Defendant, GORDON J. MELLO, at the times relevant to this action, was First Selectman of the Town of Somers. The Defendant, CONRAD MCINTIRE, JR., was Recreation Director of the Town of Somers. The Town is also named as a Defendant.

The Plaintiff became aware of facts that would indicate that MCINTIRE was performing other activities during normal business hours for Town employees. She raised the issues with MELLO, only to be rebuffed.

On May 21, 2001, the Plaintiff attended a Board of Selectmen meeting to express her concerns by speaking during the public speaking portion. The

1

meeting was chaired by MELLO. The First Selectman refused to allow the Plaintiff to speak, recessing the meeting several times before cancelling the session.

Subsequent to the meeting, MCINTIRE filed an action against the Plaintiff in State Court, the intent of which was to limit her public participation.

The Plaintiff has brought this action claiming violation of 1st, 5th, and 14th Amendments to the United States Constitution (Equal Protection and Due Process) and corresponding articles of the Connecticut Constitution (1 § 4, 14 and 20).

I.     **Standard of Review**

When passing upon a motion for summary judgment, the district court may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F 3d 420 (3d Cir. 1996).

Rather the court must resolve any ambiguities and draw all inferences against the moving party. Cargill, Inc. vs. Charles Kowsky Resources, Inc., 949 F. 2d 51 (2d Cir. 1991).

The evidence of the party against whom summary judgment is sought must be believed. Revak v. SEC Realty Corp., 18 F. 3d 81 (2d Cir. 1994).

The court must construe the evidence in the light most favorable to the party opposing summary judgment and deny the motion unless no construction of the evidence could support judgment in the plaintiff's favor. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); 398 U.S. 144, 157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F 3d 10, 14 (2d Cir. 1993); United States v. Certain Funds on Deposit in Scudder Tax Free Investement Account #2505103, 998 F. 2d 129 (2d Cir. 1993); Union Pacific Corp. v. United States, 5 F. 3d 523, 525 (Fed. Cir. 1993); Suarez v. Diskmont Plastics Corp., 229 Conn. 99, 105 (1994); Connecticut Bank & Trust Co. v. Carriage Lane Associates, 219 Conn. 772, 780-81, 595 A. 2d 334 (1980); D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434 (1980); Connell v. Colwell, 214 Conn. 242, 246-47 (1990). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F. 3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party. So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment

is to be denied. In re Unisys Savings Plan Litigation, supra, 74 F. 3d 420, 433.

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution. R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997); Michaud v. Gurney, 168 Conn. 431, 362 A. 2d 857 (1975).

## II.    The Actions of the Defendant in Terminating a Meeting Constitute a Policy

A policy sufficient to trigger municipal liability may be found and based on a pattern of acts by municipal officials, or a single act by an authorized municipal policymaker which is unlawful on its face or which directly causes the constitutional violation. Board of County Commissioners v. Brown, 520 U.S. 397, 137 L.Ed.2d 626, 117 S.Ct. 1382 (1997)

Local governments may be sued for constitutional deprivations (emphasis added) visited pursuant to governmental "custom". Monell v. Department of Social Services of New York City, 98 S.Ct. 2018, 436 U.S. 685, 56 L.Ed.2d 611 (1978). When execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury then the government or an entity is responsible. Monell, Id. p. 208.

4

The question of whether a single act constitutes official policy or custom to implicate 42 U.S.C. §1983 has resulted in a line of Supreme Court cases attempting to clarify the issue.

In 1978, the court ruled local governments are "persons; which can be sued for constitutional torts arising out of a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." <u>Monell,</u> 98 S.Ct. 2018, 2036.

The court pointed out that suit was also authorized for constitutional violations arising out of "custom" even if the custom had not received formal approval. <u>Id.,</u> at 690-691, 98 S.Ct., at 2036.

Since <u>Monell</u>, the court considered several cases involving isolated acts as indications of official policy.

The court attempted to clarify its earlier decisions in <u>City of St. Louis v. Praprotnick,</u> 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), referring to the earlier guidelines found in <u>Pembaur v. City of Cincinnati,</u> 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

> Two Terms ago, in <u>Pembaur,</u> supra, we undertook to define more precisely when a decision on a single occasion may be enough to establish an unconstitutional municipal policy. Although the Court was unable to settle on a general formulation, Justice BRENNAN's opinion articulated several guiding principles. First, a majority of the Court agreed that municipalities may be held liable under §1983 only for acts for which the municipality

5

itself is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered." Id., 475 U.S., at 480, 106 S.Ct., at 1298. Second, only those municipal officials who have "final policymaking authority" may by their actions subject the government to §1983 liability. Id., at 483, 106 S.Ct., at 1300 (plurality opinion). Third, whether a particular official has "final policy making authority" is a question of state law. Id., 10 (plurality opinion) Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business. Id., at 482-483, and n. 12, 106 S.Ct., at 1299-1300, and n. 12 (plurality opinion).

In *Pembaur,* the court considered the "official policy" requirement discussed in *Monell,* and concluded that "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." (Emphasis added). *Id.,* at 480, 106 S.Ct. 1292. "If the decision to adopt [a] particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood." *Id.,* at 481, 106 S.Ct. 1292. Further defining the limits of this definition, the court held that "municipal liability under §1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.,* at 483, 106 S.Ct. 1292.

The United States Supreme Court clarified the proof necessary for a

plaintiff to prevail in a § 1983 action when he or she is alleging a constitutional violation that consists of a single act by an authorized decisionmaker of the municipality. In *Board of County Commissioners v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997), the court first affirmed that "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Significantly, the court held that "[i]n any § 1983 suit, however, the plaintiff must establish the state of mind required to prove the underlying violation. Accordingly, proof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably. Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains." (Emphasis added.) *Id.,* at 405, 117 S.Ct. 1382. Finally, the court confined the breadth of its decision by holding that "[a] plaintiff must [also] demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision."

7

(Emphasis added.) *Id.,* at 411, 117 S.Ct. 1382.

In Brown, the United States Supreme Court has decided that when an "authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right [this] necessarily establishes that the municipality acted culpably. Similarly, the conclusion that the action taken or directed by the ... authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains." *Board of County Commissioners v. Brown, supra,* 520 U.S. at 405, 117 S.Ct. 1382.

It can hardly be questioned that the First Selectman of a Town, acting in an official capacity in chairing a meeting of the Board of Selectman, was a authorized decisionmaker under Brown.

### III.    The Plaintiff was denied a Constitutional Right by the actions of the Plaintiffs.

> Freedom of speech and the right to petition are protected activities under both the United States and Connecticut Constitutions. *See* U.S. CONST. amend. I. This amendment states: "Congress shall make no law ... abridging the freedom of speech ... or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." *See also* CONN. CONST. art. I, § 4. This section provides: "[e]every citizen may freely speak, write and publish his sentiments on all subject." *Id.; see also* CONN. CONST. art I, § 14. This section states: "[t]he citizens have a right, in a peaceable manner, to assemble for their common good, and to apply to those invested with the powers of government, for

8

redress of grievances, or other proper purposes, by petition, address or remonstrance." *Id.*

The Plaintiff had become aware that the Recreation Director was coaching school teams while on town time. She also obtained flyers indicating private tennis lessons were available from the Recreation Director by calling his office at the City. The Recreation Director was required to complete time cards. The Plaintiff is not a municipal employee but rather a citizen who wished to address the matter of public concern.

The Plaintiff was attempting, after several questions directed to the First Selectman were met with rejection, to bring a question of public concern to a representative municipal meeting. As stated in *Connick v. Myers,* 461 U.S. 138.

> The First Amendment "was fashioned to assure unfettered interchange of ideas desired by the people." *Roth v. United States,* 354 U.S. 476, 484 (1957); *New York Times Co. v. Sullivan,* 376 U.S. 254, 269 (1964). "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana,* 379 U.S. 64, 74-75 (1964). Accordingly, the Court has frequently reaffirmed that speech on public issues occupies the "'highest rung of the hierarchy of First Amendment values,'" and is entitled to special protection. *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 913 (1982); *Carey v. Brown,* 447 U.S. 455, 467 (1980).

> *Pickering v. Board of Education, supra,* followed from this understanding of the First Amendment. In *Pickering,* the Court held impermissible under the First Amendment the dismissal of a

high school teacher for openly criticizing the Board of Education on its allocation of school funds between athletics and education and its methods of informing taxpayers about the need for additional revenue. Pickering's subject was "a matter of legitimate public concern" upon which "free and open debate is vital to informed decision-making by the electorate." 391 U.S. at 571-572.

*Connick, supra,* p. 145.

When a governmental official acts as the moving force behind a deprivation of a Plaintiff's constitutional rights, this is sufficient for liability under § 1983 *Malley v. Briggs,* 475 U.S. 335, 344 n7, 106 S.Ct. 1092, 89 L.Ed.2d. 271 (1986).

Where a Plaintiff claims that a particular municipal action <u>itself</u> violates federal law, resolving issues of fault and causation is straight forward. Section 1983 itself "contains no state of mind requirement independent of that necessary to state of violation" of the underlying federal right. *Daniels v. Williams* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In any § 1983 action, however, the Plaintiff must establish the required state of mind to prove the underlying violation. Accordingly, proof that a municipalities legislative body or authorized decisionmaker has intentionally deprived a Plaintiff of a federally protected right necessarily establishes that the municipality acted culpably. Similarly that the action taken or directed by the municipality <u>or its authorized decisionmaker</u> itself violates federal law will

10

also determine that the municipal action was the moving force behind the injury of which the Plaintiff complains. *Board of County Comm. v. Brown, supra,* 1389.

**IV.    The Plaintiff was denied equal protection because of malicious or bad faith intent to injure.**

A.    The Equal Protection Clause allows a cause of action for a "class of one".

The Town of Somers, by practice and custom, allowed public speaking at the meetings of the First Selectman. The Plaintiff attempted to speak on a matter of public concern on the night in question. The Defendant, First Selectman Gordon J. Mello, was aggravated and annoyed at the earlier communications from the Plaintiff suggesting impropriety in the manner in which work hours were kept by the Recreation Director. Because of the "substantial ill will" of the First Selectman, the Plaintiff was not allowed to speak, as opposed to other citizens who were regularly allowed to speak during the portion of the meeting dedicated to comments from the public.

"The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution is essentially a direction that all person similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (citing *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 [1982])." (Internal quotation marks omitted.) *Zahra v. Southold,* 48 F.3d 674, 683 (2d Cir.1995). "A violation of equal protection by selective

[treatment] arises if: (1) the person, compared with others similarly situated, was selectively treated; and (2) ...such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *LaTrieste Restaurant & Cabaret Inc. v. Village of Port Chester,* 40 F.3d 587, 590 (2d Cir.1994) (quoting *LeClair v. Saunders,* 627 F.2d 606, 609-10 (2d Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 [1981]).[1] [When a plaintiff] does not allege selective treatment based upon his race, religion, or any intentional effort by [the] defendants to punish him for exercising his constitutional rights, [the plaintiff] must demonstrate that [the] defendants maliciously singled [him] out...with the intent to injure him." (Internal quotation marks omitted.) *Crowley v. Courville, 76 F.3d 47, 52-53 (2d Cir.1996).*

In 2000, the U.S. Supreme Court decided the case of the *Village of Willowbrook v. Olech,* 528 U.S. 562. In a five paragraph decision the Supreme Court focused on whether the Equal Protection Clause applied to a "class of one," a Plaintiff who was not asserting persecution because of her membership in a larger group, but rather was the sole target of the governments ire. The court quickly ruled that a "class of one" was perfectly appropriate. Prior to that ruling, the Court of Appeals for the Seventh Circuit, in *Olech,* held that a Plaintiff can allege an equal protection violation by asserting that State action was motivated solely by a "spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective." 160 F.3d

---

[1] Although the cases cited in support of this standard each involved the alleged selective enforcement of a regulation or ordinance by the defendants against the plaintiffs, selective enforcement is merely a subcategory of selective treatment.

<u>386 (quoting Esmail v Macrane 53 F.3d 176.)</u>

In the short decision, sending the action back to the Seventh Circuit, the court ruled "the purpose of the Equal Protection Clause of the Fourteenth Amendment is to secure every person within the states jurisdiction against intentional and arbitrary discrimination, whether occasion by express terms of a statute or by its improper execution through duly constituted agents."

**V.    The Defendant's are not entitled to Qualified Immunity**

"Qualified Immunity is a shield from liability for damages if conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald* 457 U.S. 800 (1982). The inquiry centers on whether the individual acted with objective legal reasonableness in light of the legal rules clearly established at the time. <u>*Anderson v. Creighton*</u> 483 U.S. 635 (1987). A legal rule is clearly established if the contours of the right are "sufficiently clear that a reasonable person would understand what he is doing violates the right. <u>Id.,</u> at 640. Under Connecticut law, officials are not entitled to immunity if their actions … were motivated by malice, wantonness, or the intent to injure. <u>In Re State Police Litigation,</u> 88 F.3d 111, (2nd Cir. 1996)

To defeat a claim of qualified immunity, a Plaintiff must first establish a constitutional right. Speech on a matter of public concern, such as a public

13

employee accepting other employment which working for the Town is certainly a protected First Amendment right. Secondarily, the actions of the Defendant were to deny Plaintiff those clearly established constitutional right.

**VI.    The Plaintiff has stated a cause of action against Conrad McIntire**

As previously outlined, to establish liability under § 1983, it is incumbent on the Plaintiff to determine if the actions were formulated by a policymaker. State law determines policymaking capacity. Conrad McIntire was the Director of Recreation for the Town of Somers. As such, he was responsible for creating the practices and procedures of the town recreation department. His abuse of those practices and procedures was the direct and droximate cause of the injuries suffered by the Plaintiff.

In addition, after speaking out on these issues of public concern, the Defendant McIntire filed a state lawsuit against the Plaintiff claiming intentional infliction of emotional distress, "false light" invasion of privacy, and defamation. The lawsuit is a classic SLAPP suit "Strategic Lawsuit Against Public Participation". The SLAPP is a relatively new device to limit Plaintiff's rights.

> "A new and very disturbing trend is happening in America with grave consequences for politically active citizens and for our political system. Americans, by the thousands are being <u>sued</u>,

14

simply for exercising one of our most cherished Constitutional Rights - "speaking out" on political issues. Citizens are being sued just for communicating their views to the government. Today in America, multi-million dollar lawsuits are actually being filed against citizens in groups for:

1) circulating a petition
2) voicing criticism at a school board meeting
3) sending a letter to public officials
4) filing a complaint with a government consumer civil rights or labor relations office
5) lobbying for reformed legislation

Civil actions are becoming the new means for stifling political expression. <u>Symposium: "Strategic Lawsuits Against Public Participation"</u> <u>SLAPP Suits,</u> George W. Pring and Penelope Cannon, Bridgeport Law Review, Quinnipiac College, Volume 12, #4 (1992), p.937.

As a result of the actions of the Defendant, Conrad McIntire, the Plaintiff has been chilled in the expression of her most basic constitutional rights.

*See* BLACK'S LAW DICTIONARY 217 (5th ed. 1979) ("chilling effect doctrine"). The "chilling effect" refers to any practice which discourages citizens from exercising a constitutional right. Courts recognize that the practice of filing groundless lawsuits, with the goal of retaliating, or at the very least, distracting the opposition, effectively "chills" the free exercise of citizens' constitutionally protected rights. For example, in *Bill Johnson's Restaurants v. NLRB,* the Supreme Court stated:

15

> A lawsuit no doubt may be used ... as a powerful instrument of coercion or retaliation ... Regardless of how unmeritorious the ... suit is, the [defendant] will most likely have to retain counsel and incur substantial legal expenses to defend against it...Furthermore ...the chilling effect...upon a [defendant's] willingness to engage in protected activity is multiplied where the complaint seeks damages in addition to injunctive relief.

461 U.S. 731, 740-41 (1983) (citation omitted).  See also *Webb v. Fury,* 282 S.E.2d 28, 43 (W. Va. 1981) (permitting defamation action to proceed to trial when based on petitioning activity protected by First Amendment would chill constitutional rights).

The actions of the Defendant McIntire, both in formulating policy and acting in conjunction with Defendant Mello, and in his retaliating by filing a suit against the Plaintiff, indicate, prima facie, that he acted in concert with the other Defendant's to injure the Plaintiff and to deny her rights.

THE PLAINTIFF

By _____
Michael P. Farrell
Attorney At Law
201 Center Street
West Haven, CT  06516
(203) 934-8638
Federal Bar #CT 00169

16

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed this date via first class mail, postage prepaid, to:

James P. Mooney, Esq.
Law Office of Kelly & Mooney
2452 Black Rock Turnpike
Fairfield, CT  06432

Michael P. Farrell
201 Center Street
West Haven, CT 06516
Tel. No. (203) 934 8638
Federal Bar #CT 00169

17