**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

ANN  PISCOTTANO,           :
           Plaintiff         :
                                  :
v.                                  :      Civil Action No. 3:01CV1311(CFD)
                                  :
TOWN OF SOMERS, GORDON J.    :
MELLO, CONRAD McINTIRE, JR.    :
           Defendants     :

## <u>RULING ON MOTION FOR SUMMARY JUDGMENT</u>

The plaintiff, Ann Piscottano, brought this action against the Town of Somers,

Connecticut ("Somers") and two former town employees, Gordon J. Mello and Conrad McIntire,

Jr. [1]  This case concerns a claim that Mello, as First Selectman of Somers, refused to allow

Piscottano to address the Somers Board of Selectmen concerning the conduct of McIntire at a

meeting of the Board of Selectmen on May 21, 2001.

In her one-count complaint, Piscottano alleges that the defendants: (1) violated her right

to free speech and to seek redress of grievances under the First Amendment of the United States

Constitution; and (2) violated her right to due process of law under the Fifth Amendment of the

United States Constitution.  By way of an amended complaint, Piscottano also alleges that the

defendants violated various similar rights provided to her by the Connecticut Constitution[2] and

added claims for violations of due process and equal protection under the Fourteenth

---

[1]Mello and McIntire are named in both their official and individual capacities.

[2]For example, Article 1, Section 4 of the Connecticut Constitution provides: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty."

1

Amendment of the United States Constitution.[3]  Pending is the defendants' motion for summary

judgment.  For the following reasons, that motion is granted in part and denied in part.

**I**     **Background**[4]

Piscottano is a resident of Somers.  Defendant Mello was the First Selectman for Somers,

and, as such, presided over meetings of the three-member Board of Selectmen ("Board").  The

other Selectmen were Richard Jackson and Phillips Roland.[5]  Defendant McIntire was the

Recreation Director for Somers.  The position of Recreation Director was covered by a collective

bargaining agreement between Somers and the town's employees.

In 2001, Piscottano became concerned that McIntire was providing private tennis lessons

and coaching during the time when she believed he should have been fulfilling his duties as

Recreation Director.  On May 10, 2001, Piscottano wrote a letter to Mello requesting that the

topic of McIntire's alleged misconduct be placed on the agenda for the regularly scheduled May

21, 2001 Board meeting.  In her letter to Mello, Piscottano also requested that the Board provide

notice to McIntire of her proposed agenda item.

In his affidavit submitted in support of his motion for summary judgment, Mello states

that, in response to Piscottano's letter, he reviewed McIntire's timecards, spoke to various

---

[3]Because Piscottano has set forth claims under the Constitution of the United States and 42 U.S.C. §§ 1983 and 1988, jurisdiction is invoked under 28 U.S.C. §§ 1331 and 1343(3). Supplemental jurisdiction for her claims arising under the Connecticut Constitution is invoked under 28 U.S.C. §1367.

[4]The facts are taken from the parties' Local Rule 9(a) [now Local Rule 56(a)] statements, deposition testimony and other evidence submitted by the parties.  See also Fed. R. Civ. P. 56. They are undisputed unless otherwise indicated.

[5]Jackson and Roland were not named as defendants in this action.

individuals and interviewed McIntire.  Mello further states that his investigation cleared McIntire

of any wrongdoing, and that he sent Piscottano a letter indicating that her request would not be

added to the agenda for the May 21, 2001 Board meeting.[6]  A copy of the written agenda for the

May 21 Board meeting shows that Piscottano's proposed topic was not scheduled for discussion,

but the agenda had two items denoted "audience comments." (Plaintiff's Local Rule 56(a)(2)

statement, Ex. F).

On May 21, 2001, Piscottano attended the meeting of the Board.  During the portion of

the meeting devoted to audience comments, Piscottano attempted to speak on McIntire's alleged

misconduct.  Before Piscottano could reach the substance of her proposed comments, however,

Mello cut her off, stating: "There will be no discussion, no dialogue, no talking, no comments

about a person who belongs to a union." (Trans. of 5/21/2001 meeting, Plaintiff's Local Rule

56(a)(2) statement, Ex. B).  After engaging in an animated discussion with Roland and Jackson

about adding Piscottano to the agenda,[7]  Mello declared the meeting to be in recess.[8]  In his

deposition, Mello described his purpose for recessing the meeting as follows:

---

[6]Although neither party has submitted a copy of Mello's letter to Piscottano, the parties
do not dispute its existence.  Indeed, Piscottano's attorney questioned Mello during his
deposition about a May 14, 2001 letter to her, which responded to her May 10, 2001 letter.  Her
attorney quoted the letter as stating: "All allegations of this so-called conflict of interest have
been investigated and found wanting as to content and accuracy."

[7]Roland and Jackson indicated that they thought Piscottano should be permitted to speak
about McIntire, as discussed more fully in the text, infra.

[8]The record reveals that there was substantial disagreement between Mello and the other
two Board members about the authority to add Piscottano to the agenda.  Mello believed that
only he retained the ability to recognize such motions, while Roland and Jackson appeared to
believe that they had the ability to pass a motion to add that topic to the meeting's agenda.

A member of the Board of Selectmen wished to amend the agenda and to add an executive session to the agenda [concerning Piscottano's complaint about McIntire], which is illegal. You can't do that. Plus, it would have been in violation of the union contract. My ending the meeting and the inability for Ms. Piscottano to not be able to continue was not because of me. It was because a member of the Board of Selectmen wanted to violate state laws and procedural law and violate the union contract.

The meeting eventually resumed, and comments were heard from audience members on a variety of subjects, including comments from Piscottano concerning a topic unrelated to McIntire. At some point, after Roland expressed his displeasure with Mello's refusal to add Piscottano's topic concerning McIntire to the agenda, Mello again recessed the meeting. When the meeting resumed, a follow-up discussion ensued. Roland made another motion to add that topic to the agenda, and Mello once again recessed the meeting. When the meeting resumed for the fourth time, Piscottano sought clarification from Mello concerning his refusal to add her to the agenda. Mello stated:

We have to go into executive session. Here's the bottom line. This is a representative form of government. Legally we do not have to have any audience comments whatsoever at any of our meetings. The only time citizens are allowed to speak, legally, are at town meetings. So by allowing audience comment– we don't have a problem with that, but I'm not going to get into a controversial dissertation with people because someone had the mistaken belief that someone has done something wrong. Okay. I will say this, that the situation has been thoroughly investigated, okay, and there is no problem. There will be a problem, okay, if people persist down this path as we have had to pay for in the past. Okay. So I am trying to save this town unnecessary expenditures, okay. And if someone has, or believe that they have– found someone where there is some type of infraction or they have broken the law, then you by my guest– you go see the state's attorneys general and you proceed from there. It's as simple as that.

Not satisfied with that explanation, Piscottano continued to ask for clarification of his decision. Eventually, Mello stated: "I am not pursuing it any further. I am the Chair of this meeting. I will tell you what's going to happen and what is not going to happen. Does anyone else have a

4

question?" (Id., Ex. B.)  For the third time, Roland made a motion to add Piscottano to the

agenda, which was seconded by Jackson.  Mello failed to act on Roland's motion, and recessed

the meeting until 7:00 p.m. the following day.  The record reveals that Piscottano never

commented on McIntire's alleged misconduct at the May 21, 2001 Board meeting.[9]  Piscottano

did not make any additional attempts to add the subject of McIntire's alleged misconduct to the

agenda for a future Board meeting.  (Defendants' Rule 56(a)(1) statement, ¶ 56; Plaintiff's Rule

56(a)(2) statement, ¶ 56).

     On June 20, 2001, McIntire brought an action against Piscottano in the Superior Court of

Connecticut, concerning, in part, this sequence of events, setting forth state claims for: (1)

defamation; (2) "false light"; (3) negligent infliction of emotional distress; and (4) intentional

infliction of emotional distress. That action remains pending in the Superior Court.

     On July 11, 2001, Piscottano brought the instant action in this Court.  Pending is the

defendants' motion for summary judgment.

## II      Summary Judgment Standard

     In a motion for summary judgment, the burden is on the moving party to establish that

there are no genuine issues of material fact in dispute and that it is entitled to judgment as a

matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO

Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).  The burden of showing that no genuine

factual dispute exists rests upon the moving party.  Carlton v. Mystic Transp., Inc., 202 F.3d 129,

---

    [9]At some point in time, Piscottano attempted to provide the Board members with a packet of information on McIntire, which included information relevant to McIntire's employment at Tolland High School, and Springfield College, fliers for his private tennis lessons, his résumé and his employment time cards.  According to a transcript of her deposition, she succeeded in presenting this package to Jackson and Roland.

133 (2d Cir. 2000) (citing <u>Gallo v. Prudential Residential Servs., Ltd. Partnership</u>, 22 F.3d 1219,

1223 (2d Cir. 1994)).  Once the moving party has met its burden, in order to defeat the motion

the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial,"

<u>Anderson</u>, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor.

<u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences

in favor of the party against whom summary judgment is sought. <u>Anderson</u>, 477 U.S. at 255;

<u>Graham</u>, 230 F.3d at 38.  "This remedy that precludes a trial is properly granted only when no

rational finder of fact could find in favor of the non-moving party." <u>Carlton</u>, 202 F.3d at 134.

"When reasonable persons, applying the proper legal standards, could differ in their responses to

the question" raised on the basis of the evidence presented, the question must be left to the jury.

<u>Sologub v. City of New York</u>, 202 F.3d 175, 178 (2d Cir. 2000).

**III**     **Discussion**

Piscottano's claims are set forth pursuant to 42 U.S.C. § 1983, which provides in

pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the

deprivation of rights established elsewhere."  <u>Thomas v. Roach</u>, 165 F.3d 137, 142 (2d Cir.

1999).  Thus, a plaintiff seeking to establish a claim under Section 1983 "must demonstrate a

violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d Cir. 1996) (quoting <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Keeping those principles in mind, the Court turns to the specific § 1983 claims brought against each defendant.

A) <u>Defendant Town of Somers</u>

To establish municipal liability for the allegedly unconstitutional actions of a municipal employee, the plaintiff must "plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." <u>Zahra v. Town of Southold</u>, 48 F.3d 674, 685 (2d Cir. 1995) (citing <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 691 (1978)). Municipal liability cannot be premised on a theory of respondeat superior. <u>Monell</u>, 436 U.S. at 691.

Piscottano does not claim that Mello's actions at the Board of Selectmen meeting were taken pursuant to a local policy that was formally adopted or ratified, but that they were taken or caused by an official whose actions represent official policy – Mello.[10] "Where a plaintiff relies not on a formally declared or ratified policy, but rather on the theory that the conduct of a given official represents official policy, it is incumbent on the plaintiff to establish that element as a

---

[10]At her deposition on November 22, 2002, Piscottano conceded that she was not aware of any town policy or ordinance that governs how the Board meetings are held, and what format the meetings follow. The defendants have not produced any evidence showing the rules Mello claims he was operating under at the meeting other than Mello's statement that he was following "Roberts' Rules," and a copy of the Somers Town Charter. The latter does not appear to address the issues faced by Mello at the May 21, 2001 meeting.

matter of law." Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000).  In other words, the plaintiff must establish that Mello had final policy making authority with respect to the particular action at issue–here, control of the agenda and proceedings of a Board meeting.  Id.  "Whether an official in question possessed final policy making authority in a particular area is a legal question to be determined by reference to state law, local law, and custom and usage having the force of law." Russo v. City of Hartford, 341 F. Supp. 2d 85, 108 (D. Conn. 2004).

The Town claims in its motion for summary judgment that Piscottano has not set forth any evidence that Mello had final policy making authority on any matter relevant to this lawsuit, or, more specifically, that he had the authority to control the particular meeting of the Board. This claim is belied by the transcript submitted from the May 21, 2001 Board meeting, however, in which Mello told Piscottano that the other Board members, Roland and Jackson, "do not have the authority to add you to any agenda," and then told Roland that "you are not the Chair.  I recognize motions."  (Transcript 5/21/2001 p. 2).   Then, after he once again denied Piscottano's request to address the Board on the topic of McIntire, Mello stated: "I am the Chair of this meeting.  I will tell you what's going to happen and what's not going to happen." (Id. p. 8). Finally, at his deposition on February 28, 2002, the following colloquy occurred between Piscottano's attorney and Mello:

Q: "Whether or not an item was to be placed on the agenda for discussion, that's something within your area of responsibility to determine?"

A: "That's correct." (Transcript, 2/28/2002, p. 20).

The Court finds that there is a genuine issue of material fact as to whether Mello had the authority to set the policy on who spoke at Board meetings, and on what topics.  Jeffes, 208 F.3d

at 57.  Consequently, the motion for summary judgment is denied to the extent it seeks summary

judgment on behalf of the Town of Somers.[11]

B) <u>Defendant McIntire</u>

"It is well settled in this [the Second] Circuit that personal involvement of defendants in

alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."

<u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) (citing cases) (quotation marks omitted); <u>see</u>

<u>also</u> <u>Blyden v. Mancusi</u>, 186 F.3d 252, 264 (2d Cir. 1999) ("Section 1983 imposes liability only

upon those who actually cause a deprivation of rights").  Reading the complaint in a light most

favorable to Piscottano, it appears that there are three claims directed at McIntire.  Each claim

will be addressed in turn.

Paragraph nine of the complaint alleges that "[e]ach defendant had an affirmative duty to

prevent other defendants from violating the constitutional right[s] of the plaintiff as herein

described and each defendant failed in the exercise of that duty, such failure was intentional and

in reckless disregard of the plaintiff's constitutional rights."  As McIntire correctly contends,

Piscottano has not created a genuine issue of material fact that, as the Recreation Director for the

Town, he had a duty to prevent Mello and the Board from stopping Piscottano's participation at

the May 21, 2001 Board meeting,[12] or that he was involved in Mello's decisions that evening

---

[11]Again, to establish municipal liability for the allegedly unconstitutional actions of a
municipal employee, the plaintiff must "plead and prove three elements: (1) an official policy or
custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." <u>Zahra
v. Town of Southold</u>, 48 F.3d at 685.  Because Somers has only challenged the first element of
this test in its motion for summary judgment, the Court need not address the other elements here.

[12]In her amended complaint, Piscottano also alleges that the defendants' actions "had a
chilling effect on the free speech rights of the plaintiff by allowing others to speak at a public
forum, but not the plaintiff."  To the extent it is directed at McIntire, it also is without merit.

9

preventing her from speaking.[13]  Paragraph seventeen of the complaint alleges a deprivation of

equal protection under the Fifth and Fourteenth Amendments[14] and paragraph eighteen alleges a

due process claim, both concerning Mello's refusal to allow Piscottano to speak at the meeting of

the Board of Selectmen.  However, as with paragraph nine of the Complaint, there has been no

evidence presented that McIntire had any personal involvement with Mello's decisions to deny

Piscottano the ability to speak at the May 21, 2001 meeting.

In her "Material Facts Plaintiff Contends There is a Genuine Issue to be Tried" [doc.

#31], Piscottano also maintains that McIntire's lawyer spoke at a Board of Selectmen meeting

subsequent to the May 21, 2001 meeting and threatened a law suit against anyone "who

_____

Piscottano has not made a showing that McIntire had any involvement in the May 21 Board meeting, and thus no reasonable jury could find that he attempted to chill her speech by preventing her from speaking at that meeting.

[13]In her memorandum in opposition to the motion for summary judgment, Piscottano claims that McIntire's state court action "is a classic SLAPP suit ('Strategic Lawsuit Against Public Participation')."  As one court has explained: "SLAPP suits are brought to obtain an economic advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff.  A SLAPP suit . . . is typically filed to delay and to punish activists by imposing litigation costs on them for exercising their constitutional right to speak and petition the government for redress of grievances, rather than to prevail on the suit."  Wilcox v. Superior Court, 27 Cal. App.4th 809, 815-16, 33 Cal. Rptr.2d 446 (1994).  Twenty states, not including Connecticut, currently have anti-SLAPP statutes, which "can provide for early dismissal of actions before discovery and the shifting of defendants' attorney's fees to filer."  Practicing Law Institute, *Patents, Copyrights, Trademarks, and Literary Property Course Handbook Series*, PLI Order Number 2855, 796 PLI/Pat 411, 422 (2004).  Notably, these statutes serve as a defense to a SLAPP lawsuit, and do not provide a basis for a separate cause of action.  Id; see also Batzel v. Smith, 333 F.3d 1018 (2003) (defendants filed a motion to dismiss under California's anti-SLAPP statute).  Because McIntire's action is still pending in the Superior Court and there has been no showing that this issue could not be raised before the state court, it is not for this Court to determine whether it has merit.  Piscottano also suggests that a political bond between Mello and McIntire may have contributed to Mello's decisions at the May 21, 2001 Board meeting, but has not presented evidence to support this claim.

[14]The amended complaint invokes the Fourteenth Amendment.

questioned McIntire's actions."  Apparently, Piscottano claims that McIntire thus "chilled" her

First Amendment request to speak at that subsequent meeting.  Piscottano also refers to this in

her deposition.  However, neither the original Complaint nor its Amendments of February 26,

2002 make any reference to this claimed incident.  Moreover, the Complaint – even as amended

– specifically refers to the May 21, 2001 Board meeting as the one which resulted in the

deprivation of Piscottano's right to speak.  Accordingly, events at subsequent Board meetings are

not within the allegations of Piscottano's Complaints, even when liberally construed.

Finally, Piscottano, in her deposition, mentioned that she believed that McIntire interfered

with her right to speak at a Recreation Commission meeting which preceded the May 21, 2001

Board of Selectmen meeting.  She claims that McIntire intimidated her before she spoke to the

Recreation Commission about McIntire's conduct – the same topic she tried to address at the

May 21, 2001 Selectmen meeting.  However, in her Local Rule 56(c)(2) statement [doc. #30],

Piscottano concedes that she was allowed to speak at that meeting of the Recreation Commission

concerning this topic [¶ 6], and she specifically denied in her 56(c)(2) statement that McIntire

violated her First Amendment speech rights at the Recreation Commission meeting [¶ 38].

Because Piscottano has not presented a genuine issue of material fact as to whether

McIntire deprived her of her constitutional rights, either directly or indirectly, the motion for

summary judgment is granted to the extent it seeks summary judgment on behalf of McIntire.[15]

---

[15]At various times in her deposition, Piscottano claimed that McIntire's conduct resulted
in her children not being able to participate in tennis lessons conducted by McIntire as well as
higher taxes she was forced to pay as a result of his alleged inattention to town duties.  Such
claims are not reasonably within the allegations of the complaint and are of dubious
constitutional support.

C) <u>Defendant Mello</u>

Again, it "is well settled in [the Second] Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) (citing cases) (quotation marks omitted); <u>see also</u> <u>Blyden v. Mancusi</u>, 186 F.3d 252, 264 (2d Cir. 1999) ("Section 1983 imposes liability only upon those who actually cause a deprivation of rights").  The plaintiff alleges that Mello personally deprived her of several of the rights provided to her by the constitutions of the United States and Connecticut.  Each will be addressed in turn.

1) Free Speech

Piscottano first claims that Mello violated her right to free speech under the First Amendment of the United States Constitution by refusing to add her to the agenda for the May 21, 2001 Board meeting, and not allowing her to speak about McIntire.  Piscottano claims that Mello's actions deprived her of exercising her "constitutionally protected rights to free speech" and "attempted to have a chilling effect on the free speech rights of the plaintiff and prevent her from airing her legitimate concerns over the conduct of the municipal government and its employees."  Mello has moved for summary judgment on the First Amendment claim, arguing that Piscottano did not have a First Amendment right to speak at the meeting, and his refusal to add her to the agenda or allow her to speak on this topic was in accordance with a content-neutral town policy.[16]  The claimed "policy" was a prohibition against public comment on a town

_____

[16]In an amendment to her complaint, Piscottano alleged that, in addition to violating her rights under the United States Constitution, the defendants violated her rights under Article 1, §§ 4, 14, and 20 of the Connecticut Constitution.  Piscottano has not set forth an independent analysis of her claims under the Connecticut Constitution in her memorandum in opposition to summary judgment, nor argued that it provides her with greater protections that the equivalent

employee who was covered by a collective bargaining agreement.  Although not clearly articulated by Mello at the board meeting, it appears he was referring to the various rights of an employee covered by a collective bargaining agreement to challenge claims of employment misconduct before discipline could be applied to him.

_____"The question of whether certain speech enjoys a protected status under the First Amendment is one of law, not fact." Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999).  The First Amendment provides in part that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I.  Freedom of speech is not absolute, however: A violation occurs only when the restricted speech is constitutionally protected and when the government's justification for the restriction is insufficient.  See Frisby v. Schultz, 487 U.S. 474, 479 (1988).  The Supreme Court has articulated a three-step, forum-based test for determining whether a state actor violated a plaintiff's First Amendment right to free speech, under which a court must determine: (1) whether plaintiff's speech is protected by the First Amendment; (2) the nature of the forum: public, designated or limited public, or nonpublic; and (3) whether the defendant's justifications for limiting the plaintiff's speech satisfy the requisite standard.  Cornelius v.

-------------------------

parts in the United States Constitution.  Therefore, the Court concludes, in accordance with the Connecticut Supreme Court's policy regarding unaddressed claims under the Connecticut Constitution, that Piscottano's state constitutional rights are co-extensive with her federal constitutional rights. See, e.g., Donahue v. Southington, 259 Conn. 783, 794 n. 7, 792 A.2d 76 (2002) ("If a party does not provide an independent analysis asserting the existence of greater protection under the state constitutional provision than its federal counterpart . . . we will not of our own initiative address that question . . . Accordingly, the federal equal protection standard is considered prevailing for the purposes of our review of both the state and federal equal protection claims in this case").

NAACP Legal Defense & Educational Fund, 473 U.S. 788, 797 (1985).[17]  Each element will be discussed in turn.

_____              i) Protected Speech

The First Amendment's protection of free speech, made applicable to the states through the Fourteenth Amendment, extends to a broad range of speech and expressive conduct.  Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, 515 U.S. 557 (1995).  Speech on public issues and political matters lies at the heart of protected speech. See, e.g., R.A.V. v. City of St. Paul, 505 U.S. 377, 422 (1992) ("Our First Amendment decisions have created a rough hierarchy in the constitutional protection of speech. Core political speech occupies the highest, most protected position . . . .") (Stevens, White and Blackmun, JJ. concurring); New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964) ("debate on public issues should be uninhibited, robust, and wide-open"); Morris, 196 F.3d at 111 ("As a general rule, speech on any matter of political, social, or other concern to the community is protected by the First Amendment") (internal quotation marks omitted).

_____

[17]Piscottano's analysis of the First Amendment claim in her Memorandum in Opposition is of limited assistance in ruling on the instant motion for summary judgment.  Specifically, her legal analysis and arguments are structured as if this were a case in which a public employee was retaliated against for engaging in speech that related to a matter of public concern.  The "public concern" balancing test set out by the United States Supreme Court in Pickering v. Board of Education, 391 U.S. 563 (1968), however, is applicable only to situations in which an public employee is being disciplined for his or her speech or associations.  See, e.g., Piscottano v. Murphy, 317 F. Supp. 2d 97, 104-07 (D. Conn. 2004) (termination of employment did not violate prison guards' First Amendment rights because association with a motorcycle gang is not a matter of public concern).  Piscottano is not an employee of Somers.  Even assuming her comments about McIntire's alleged conflict of interest were of interest to the public, this does not require the application of the Pickering balancing test.

Mello contends that this case does not involve an issue of public concern, and that the topic of McIntire's job performance was "primarily personal" to Piscottano. In her opposition memorandum, Piscottano maintains that McIntire's alleged misconduct is a matter of public interest because he was paid by the town, had a set work schedule, and provided important services to the town. The Court agrees, and finds that her proposed speech involved a topic of public concern. See, e.g., Mesa v. White, 197 F.3d 1041 (10th Cir. 1999) ("The performance of public employees and the handling of employment-related litigation can be important matters of public concern").

ii) Nature of the Forum

Next, the Court must classify the nature of the Board meeting. Though the Board's meetings are held on public property, "the First Amendment does not guarantee access to property simply because it is owned or controlled by the government." United States Postal Service v. Council of Greenburgh Civic Associations, 453 U.S. 114, 129 (1981). Rather, "'the state, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.'" Id. (quoting Greer v. Spock, 424 U.S. 828, 836 (1976)). The extent to which government may regulate expressive activity on public property depends upon the "character" of the public property in question. See Perry Education Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 44 (1983).

The Supreme Court has recognized three types of forums that may exist on government property: traditional public forums, designated public forums, and nonpublic forums. Traditional public forums are places such as streets and parks that "by long tradition . . . have been devoted to assembly and debate." Id. at 45. Designated public forums are those that the government

15

opens "for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." Cornelius, 473 U.S. at 802. The nonpublic forum is public property which the government has not opened to public communication either by tradition or by designation. Perry Education Ass'n., 460 U.S. at 46.

Courts have held that a designated public forum exists when a governmental body affords the public an opportunity to address the body at its meeting. See, e.g., Mesa v. White, 197 F.3d 1041 (10th Cir. 1999) (county commission meeting was a designated public forum); White v. City of Norwalk, 900 F.2d 1421, 1425 (9th Cir. 1990) (public allowed to speak during Council's discussion of agenda items) (citing in part City of Madison, Joint School Dist. No. 8 v. Wisconsin Employment Relations Commission, 429 U.S. 167, 175, (1976)); Jones v. Heyman, 888 F.2d 1328, 1331 (11th Cir. 1989) (members of public were allowed to speak during Commission's discussion of an agenda item if they previously submitted a written request to speak on this item); Zapach v. Dismuke, 134 F. Supp. 2d 682 (E.D. Pa. 2001) (Zoning Hearing Board meeting was designated public forum for public comment on proposal for motor home park); Scroggins v. City of Topeka, 2 F. Supp. 2d 1362, 1370 (D. Kan. 1998) (characterizing the Council meeting as a designated public forum); Pesek v. City of Brunswick, 794 F. Supp. 768, 782 (N.D. Ohio 1992) (council opened meeting to public and allowed public to speak on items on the agenda). Here, the parties seem to agree that the Board meeting was a designated public

forum.[18]  Based on the parties' apparent agreement, and these decisions, the Court finds that the

Board meeting was a designated public forum.[19]

iii) Standards for Regulation

Generally speaking, the nature of the forum in which the speech is restricted dictates the

level of scrutiny required.  See United States v. Kokinda, 497 U.S. 720, 726-27 (1990).  Like a

traditional public forum, a government's regulation of speech activity in a designated public

forum is examined under strict scrutiny analysis.  Id.  Unlike a traditional public forum, however,

the government "is not required to indefinitely retain the open character" of a designated public

forum.  Perry Education Ass'n., 460 U.S. at 46.  As long as the property is designated for

communicative purposes, however, the government is "bound by the same standards as apply in a

traditional public forum."  Id.  The appropriate standard to apply depends on whether the

government regulation was content-based or content-neutral.  Any government regulations that

---

[18]The defendants classify the Board meeting as such in their brief.  Piscottano does not dispute the defendants' characterization in her opposition memorandum.  Piscottano has acknowledged that the Board had an agenda for the May 21, 2001 meeting, and she requested to be added to that agenda.  This indicates that she does not consider a Board meeting to be a traditional public forum, and that she had some knowledge that audience participation at the Board's meetings was limited in some manner.

[19]Neither party has argued that the Board meeting was a limited public forum, which "is a subset of the designated public forum. It arises 'where the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects. . . . Restrictions on speech not within the type of expression allowed in a limited public forum must only be reasonable and viewpoint neutral." Make the Road by Walking, Inc. v. Turner, 378 F.3d 133, 143 (2d Cir. 2004). Here, although an agenda was published which did not include a discussion of McIntire, the agenda had two entries for "public forum," did not indicate any restriction on what could be discussed, and Piscottano had requested that this topic be included on the agenda.  The Defendants have also not presented any bylaws or other guidelines of the Board of Selectmen which limited the topics which could be discussed.  It may very well be that the May 21 meeting was a limited public forum, but based on the record presented by parties here, the Court cannot make that determination.

17

are content-based must be narrowly drawn to achieve a compelling governmental interest. Id; Make the Road by Walking, Inc., 378 F.3d at 142.  Any government regulations that are content-neutral may restrict the time, place and manner of the protected speech, as long as the regulation is "narrowly tailored to serve a significant governmental interest" and "leave[s] open ample alternative channels for communication." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).

Therefore, the Court must determine whether the decision to prevent Piscottano from commenting on McIntire's alleged misconduct was based on a content-based or a content-neutral restriction.  A restriction of speech is content-neutral if it is "justified without reference to the content of the regulated speech." Clark v. Community for Creative Non-Violence, 468 U.S. 288, 295 (1984).  "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." Ward v. Rock Against Racism, 491 U.S. at 791. "A regulation that serves purposes unrelated to the content of the expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." Id.

Piscottano has not addressed the appropriate legal analysis for this issue in her memorandum in opposition to the motion for summary judgment.  Mello contends that the Board's restriction of Piscottano's proposed comments on McIntire's alleged conflict of interest was based on a policy that "is on its face content-neutral." (Defendants' Brief  p. 35)  Further, he contends that "the Town of Somers restricted public comments to subject matters on the agenda in order to avoid discussion of matters which might invoke the protections of a collective

18

bargaining agreement and which would also require prior notice to those affected and to comply

with the general requirements of the Connecticut Freedom of Information notice requirements."

The only evidence submitted in support of that argument, however, is the transcript of Mello's

deposition, in which he states:

> A member of the Board of Selectmen wished to amend the agenda and to add an
> executive session to the agenda, which is illegal.  You can't do that.  Plus, it
> would have been in violation of the union contract.  My ending the meeting and
> the inability for Ms. Piscottano to not be able to continue was not because of me.
> It was because a member of the Board of Selectmen wanted to violate state laws
> and procedural law and violate the union contract.

Other than this self-serving testimony from Mello, the defendants have not provided this Court

with any evidence of the "policy" of the town, or any state law or procedural law, that would

demonstrate that Mello's conduct was pursuant to a policy actually held or adopted by the Board.

Compare Scroggins, 2 F. Supp. 2d at 1370 (analyzing the Topeka City Council's Code, §

A2-25(b), and finding that "the Council's Rule 8.3 prohibiting 'personal, rude or slanderous

remarks' is content-neutral").  Moreover, at his deposition, Mello had the following exchange

with Piscottano's attorney:

> Q: "If Ms. Piscottano was to come to a public speaking session [of the Board] and
> indicate she wanted to speak, would she be allowed to speak on any subject?"
> A: "Yes."
> Q: And would that have been the policy that you would have entertained while you were
> First Selectman?"
> A: "I encouraged it.  I afforded citizens two opportunities to speak at Board of
> Selectmen's meetings.  Prior to my being First Selectman, it was only offered once."
> (Trans. Feb. 28, 2002, ¶. 20-21).

This testimony contradicts Mello's previous statement that Piscottano could be restricted from

speaking on certain topics at Board meetings.

19

In her affidavit submitted in support of her memorandum in opposition to the motion for summary judgment, Piscottano claims that Mello referred to her allegations concerning McIntire's conduct as "political bullshit," which she should take "elsewhere."  These comments, if true, could support a finding that the "policy" cited by Mello at the May 21, 2001 Board meeting was based on the proposed content of Piscottano's comments and perhaps not related to Mello's articulated justification for preventing her from speaking.

Finally, the Court notes that although Mello claims that he was concerned about discussing an employment matter without the subject employee having had prior notice, he concedes that Piscottano had specifically requested in her May 10, 2001 letter that McIntire be given notice that she wished to discuss his duties as Recreation Director at the May 21, 2001 Board meeting.  Consequently, at this time, the Court is unable to discern whether Mello was acting according to a content-based or a content-neutral restriction.

In sum, there are genuine issues of material fact at least as to whether Mello was acting in accordance with an established town policy in prohibiting Piscottano from speaking, and whether his decisions were content-neutral.   Even if Mello is correct, however, and he was acting in accordance with a content-neutral Town policy, the Court finds that there is also a genuine issue of material fact as to whether that policy is "narrowly tailored to serve a significant governmental interest" and "leave[s] open ample alternative channels for communication."  Rock Against Racism, 491 U.S. at 791.  The Board may have a significant interest in regulating the items to be addressed in its meetings,[20] but there is a genuine issue of material fact as to whether the Board's

---

[20]Other courts have concluded similarly.  See, e.g., City of Madison Joint Sch. Dist., 429 U.S. at 176 n. 8 ("Plainly, public bodies may confine their meetings to specified subject matter . . . ."); Grayned v. City of Rockford, 408 U.S. 104, 119 (1972) (finding that city has a compelling

policy was narrowly tailored to that significant interest.  To be narrowly tailored the policy must "promote a substantial government interest that would be achieved less effectively absent the regulation.' " Id. at 799 (quoting United States v. Albertini, 472 U.S. 675, 689 (1985)). The analysis does not hinge on a  "judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests or the degree to which those interests should be promoted."  Rock Against Racism, 109 U.S. at 2758.

Finally, Piscottano states in her affidavit that, although she knew *the Board* may not be able to speak about an employment matter governed by a collective bargaining agreement, she thought that *she* could still speak on the topic to the Board without a dialogue.  In addition, she states that she had been able to speak previously before the Town's Recreation Commission on the same issue concerning McIntire.  Moreover, Mello's deposition testimony reveals that, after the May 21, 2001 Board meeting, the Town's attorney indicated that in the future the Board should allow a resident to speak on such a matter, and merely refrain from replying to such comments.

---

interest in undisturbed school session); White v. City of Norwalk, 900 F.2d 1421, 1425-26 (9th Cir. 1990) ("a city Council meeting is . . . a governmental process with a governmental purpose. The Council has an agenda to be addressed and dealt with. Public forum or not, the usual first amendment antipathy to content-oriented control of speech cannot be imported into the Council chambers intact. . . . While a speaker may not be stopped from speaking because the moderator disagrees with the viewpoint he is expressing, it certainly may stop him if his speech becomes irrelevant or repetitious."); Jones v. Heyman, 888 F.2d 1328, 1333 (11th Cir. 1989) (finding a significant governmental interest in controlling the agenda and preventing the disruption of public meetings); Wright v. Anthony, 733 F.2d 575, 577 (8th Cir. 1984) (finding that public hearing procedure limiting speech time to five minutes per speaker was a valid time, place, and manner restriction that served a significant governmental interest in conserving time and allowing others opportunity to speak); Zapach v. Dismuke, 134 F. Supp. 2d at 692 (Zoning Hearing Board had significant interest in orderly conduct of its meeting).

As mentioned, even if the Town does have a policy which prevents citizens from addressing "union matters" at a Board meeting, there is a genuine issue of material fact as to whether that policy is narrowly tailored to meet a significant governmental interest. Finally, there is a substantial question whether the "compelling state interest" test justifying Mello's actions were met here. Although the chair of a public meeting is permitted to ensure that comments be relevant to the topic at hand, see, e.g., Zapach v. Dismuke, 134 F. Supp. 2d 682, and there are circumstances where privacy interests may require not identifying particular persons subject to the public comment, see, e.g., Schuloff v. Murphy, 159 F.3d 1348 (2d Cir. 1998), vague references to a collective bargaining agreement or a state freedom of information law likely would not justify stopping a member of the public from commenting on possible unethical conduct of a high level town employee during the unrestricted "public comment" portion of a regularly scheduled meeting of a town's board of selectmen. Accordingly, to the extent the motion for summary judgment is directed at Piscottano's claim that her right to free speech was violated, it is denied.

2) Equal Protection

The complaint alleges that Mello "deprived the plaintiff of the equal protection of the law as provided by the Fifth Amendment to the United States Constitution by subjecting the plaintiff to treatment different from that which would have [been] afforded other people who have had an opportunity to speak." Piscottano claims that she was deprived of equal protection as a "class of one" under the U.S. Supreme Court decision in Willowbrook v. Olech, 528 U.S. 562 (2000). Because Piscottano has created a genuine issue of material fact as to whether "she has been

intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment," <u>Id</u>. at 564, summary judgment is also denied on that aspect of her claim.

     3) <u>The Right to Petition</u>

Piscottano next alleges that Mello's actions deprived her of her right to petition for a redress of grievances in violation of her rights secured by the First and the Fourteenth Amendments to the United States Constitution.[21]  This claim appears to also center around Mello's failure to add her to the agenda for the May 21, 2001 Board meeting, and his subsequent failure to allow her to speak at that meeting.  The defendants contend that Piscottano has misconstrued her right to petition the government as being a right to speak at the Board meeting.

The First Amendment protects, inter alia, the right "to petition the Government for a redress of grievances."  The Second Circuit has instructed that "[t]he right to petition government for redress of grievances--in both judicial and administrative forums--is 'among the most precious of the liberties safeguarded by the Bill of Rights.'"  <u>Graham v. Henderson</u>, 89 F.3d 75, 80 (2d Cir. 1996) (quoting <u>United Mine Workers v. Illinois State Bar Ass'n</u>, 389 U.S. 217, 222 (1967)).  However, courts have held:

> The "right to petition government afforded by the First Amendment does not include the absolute right to speak in person to officials. Where written

_____

[21]In her complaint, Piscottano alleges that the defendants "deprived her of her right to petition for a redress of grievances in violation of her rights secured by the Fourth and Fourteenth Amendments to the United States Constitution."  The Court believes that this is a typographical error, and that Piscottano meant to refer to the First Amendment, rather that the Fourth Amendment.  The First Amendment provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend. I.  The Court will address her claim accordingly.

> communications are considered by government officials, denial of a hearing does not infringe upon the right to petition. The right to petition government does not create in the government a corresponding duty to act."

Cronin v. Town of Amesbury, 895 F. Supp. 375, 390 (D. Mass. 1995) (quoting Stengel v. City of Columbus, Ohio, 737 F. Supp. 1457, 1459 (S.D. Ohio 1988)), aff'd, 81 F.3d 257 (1st Cir. 1996). "The rationale behind this rule is unquestionably sound." Scroggins, 2 F. Supp. 2d at 1375.   For example, in Green v. City of Moberly, 576 F. Supp. 540, 542 (E.D. Mo. 1983), the court found that the plaintiff's "letter of December 26, 1982 presented plaintiff's 'grievances' and this 'petition' was received and considered by defendants. What plaintiff was deprived of, at most, was simply the opportunity to *orally* address the City Council while it was in session." (emphasis in original).  Similarly, Piscottano's right to petition the government was satisfied in the instant case.  On May 10, 2001, Piscottano sent a letter to Mello that set forth her concerns about McIntire's alleged misconduct.  In his affidavit, Mello states that he conducted an investigation into McIntire's job performance in response to Piscottano's letter.   Moreover, Piscottano was allowed to present her information packet on McIntire to Roland and Jackson at the May 21 meeting.  Thus, although Piscottano may not be satisfied with Mello's response to her complaint about McIntire, Mello cannot be found to have violated her right to petition under the First Amendment based on the undisputed facts.

### 4) "Chilling Effect"

Piscottano also alleges in her amended complaint that Mello's actions "had a chilling effect on the free speech rights of the plaintiff by allowing others to speak at a public forum, but not the plaintiff."

"[C]onstitutional violations may arise from the deterrent, or 'chilling' effect of governmental regulations that *fall short of a direct prohibition* against the exercise of First Amendment rights." <u>Laird v. Tatum</u>, 408 U.S. 1, 12-13 (1972) (emphasis added); <u>see also</u> <u>Hankard v. Town of Avon</u>, 126 F.3d 418, 423 (2d Cir. 1997) (stating that "governmental action which falls short of a direct prohibition on the free exercise of speech may be subject to constitutional challenge").  Here, however, Piscottano has not alleged that Mello took some action, which, by its effect, chilled her First Amendment rights; rather she has alleged that Mello directly prohibited her from exercising her First Amendment right to speak at the public meeting. <u>Compare</u> <u>Levin v. Harleston</u>, 966 F.2d 85, 89-90 (2d Cir. 1992) (holding that the university's implicit threats of future censure against faculty sufficient to violate First Amendment rights). Consequently, Mello is granted summary judgment on Piscottano's "chilling effect" claim.

     5) <u>Due Process</u>

Piscottano alleges that Mello violated her right to substantive and procedural due process under the Fifth and Fourteenth Amendments of the United States Constitution.  Mello contends that Piscottano has not properly alleged facts or presented evidence to support a due process claim.  The Court will analyze Piscottano's substantive and procedural claims separately.

     i) Substantive Due Process

Substantive due process does not protect "against government action that is 'incorrect or ill-advised.'" <u>Lowrance v. Achtyl</u>, 20 F.3d 529, 537 (2d Cir. 1994) (quoting <u>Bishop v. Wood</u>, 426 U.S. 341, 350 (1976)).  Rather, "the protections of substantive due process are available only against egregious conduct which goes beyond merely 'offending some fastidious squeamishness or private sentimentalism' and can fairly be viewed as so 'brutal' and 'offensive to human dignity' as

to shock the conscience." Smith v. Half Hollow Hills Cent. Sch. Dist., 298 F.3d 168, 173 (2d Cir.

2002) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 & n. 6 (2d Cir. 1973) (Friendly, J.)); see

also County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998).  Thus, the acts must be such as

"to offend even hardened sensibilities." Rochin v. California, 342 U.S. 165, 172 (1952).

 Even drawing all inferences in Piscottano's favor, the Court concludes that the acts alleged

by her do not satisfy this high standard.  Although a reasonable jury could find that Mello

prevented Piscottano from speaking, was rude to her at the meeting, and failed to properly explain

the rationale supporting his decision not to let her speak about McIntire's alleged misconduct, no

reasonable jury could find that those acts meet the "shock the conscience" standard.

Consequently, Mello is entitled to summary judgment on Piscottano's substantive due process

claim.  See, e.g., Delrio v. Univ. of Connecticut Health Care, 292 F. Supp. 2d 412, 424-25 (D.

Conn. 2003) (granting summary judgment when plaintiff had not "presented any evidence to show

that defendants engaged in any conduct, that, as a matter of law, 'shocks the conscience.'").

### ii) Procedural Due Process

 "Procedural due process imposes constraints on governmental decisions which deprive

individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the

Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976).  Therefore,

"[t]o award damages under 42 U.S.C. § 1983 for an alleged violation of procedural due process, a

court must find that, as the result of conduct performed under color of state law, the plaintiff was

deprived of life, liberty, or property without due process of law." Bedoya v. Coughlin, 91 F.3d

349, 351 (2d Cir. 1996).  Although Piscottano has not stated what type of interest she was

deprived of, it is clear that it was not a property interest.  Therefore, in order for Piscottano to

recover on this claim, she must demonstrate that she was deprived of a liberty interest without due process of law.  Piscottano has not presented any evidence from which a reasonable jury could find that Mello deprived her of a constitutionally protected liberty interest at the May 21, 2001 Board meeting.  Therefore, the Court grants the defendants' motion for summary judgment as to her procedural due process claim.  See, e.g., Delrio, 292 F. Supp. 2d at 424-25 (granting summary judgment when the plaintiff failed to create a genuine issue of material fact as to the existence of a constitutionally protected liberty interest).

　　6) Conclusion

　　The Court finds that Mello is entitled to summary judgment on the following claims: (1) that he violated Piscottano's right to seek redress of grievances under the First and Fourteenth Amendments of the United States Constitution; (2) that he violated her right to due process under the Fifth and Fourteenth Amendments of the United States Constitution; (3) that he "chilled" her First Amendment rights; and (4) that he violated related claims under the Connecticut Constitution.  Mello's motion for summary judgment, however, is denied as to the free speech and equal protection claims pursuant to the First and Fourteenth Amendments of the United States Constitution and the Connecticut Constitution, subject to the following qualified immunity analysis.

　　Piscottano's § 1983 claims against McIntire are dismissed in their entirety, and her claims against the Town remain pending, as indicated above.

IV    **Qualified Immunity**

Mello also contends that he is entitled to summary judgment on the ground of qualified

immunity.[22]  As a general matter, "[t]he qualified immunity defense is intended to strike a fair

balance between (1) the need to provide a realistic avenue for vindication of constitutional

guarantees, and (2) the need to protect public officials who are required to exercise their discretion

and the related public interest in encouraging the vigorous exercise of official authority.  The

qualified immunity doctrine protects government officials from civil liability in the performance

of discretionary functions as long as their actions could reasonably have been thought consistent

with the rights they are alleged to have violated."  Lee v. Sandberg, 136 F.3d 94, 100 (2d Cir.

1997) (citations and quotation marks omitted).  As the Supreme Court has stated, qualified

immunity provides "ample protection to all but the plainly incompetent or those who knowingly

violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).   Thus, government officials are

shielded from liability when their actions do not violate "clearly established statutory or

constitutional rights of which a reasonable person would have known." Lee, 136 F.3d at 101

(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

Even if a clearly established statutory or constitutional right is violated, qualified

immunity is nonetheless a defense if the official's unlawful actions were objectively reasonable as

measured by reference to clearly established law and the information the official possessed.

Harlow, 457 U.S. at 818; Anderson v. Creighton, 483 U.S. 635, 641 (1987); see also Robison v.

Via, 821 F.2d 913, 921 (2d Cir. 1987) ("[E]ven if the contours of the plaintiff's federal rights and

---

[22]"[I]t is well-settled that municipalities cannot avail themselves of qualified immunity . . . ." Clarke v. Sweeney, 312 F. Supp. 2d 277, 302 n.26 (D. Conn. 2004) (citing Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 166 (1993)).

the official's permissible actions were clearly delineated at the time of the acts complained of, the

defendant may enjoy qualified immunity if it was objectively reasonable for him to believe that

his acts did not violate those rights.").

> The Second Circuit has summarized the foregoing principles as follows:

> Summary judgment dismissing a claim on the basis of the defendants'
> qualified-immunity defense may thus be granted if the court finds that the asserted
> rights were not clearly established, or if the evidence is such that, even when it is
> viewed in the light most favorable to the plaintiffs and with all permissible
> inferences drawn in their favor, no rational jury could fail to conclude that it was
> objectively reasonable for the defendants to believe that they were acting in a
> fashion that did not violate a clearly established right.

In re State Police Litigation, 88 F.3d 111, 123 (1996); accord Ford v. McGinnis, 353 F.3d 582,

597 (2d Cir. 2003); Williams v. Greifinger, 97 F.3d 699, 703 (2d Cir. 1996).

In the motion for summary judgment, Mello argues that, even if Piscottano had a clearly

established right to speak about McIntire's alleged wrongdoing at the May 21, 2001 Board

meeting, it was objectively reasonable for him to prevent her from speaking on the topic of

McIntire and to recess that meeting due to his concern about discussing a union matter subject to

the collective bargaining agreement between the town and its employees.  Mello maintains that it

was an exercise of  "good faith and honest judgment" for him not to allow that meeting to go

forward on that basis.  In support of this claim, Mello states in his affidavit that "the town form of

government [used by Somers] does not mandate that any particular member of the public has an

unlimited right to speak at a meeting of the Board of Selectmen."

There is no controlling case law from the U.S. Supreme Court or the Second Circuit Court

of Appeals on the narrow issue of the right of the chair of a public meeting to restrict the speech

of a member of the public at a designated public forum regarding the claimed ethical misconduct

of a public official subject to a collective bargaining agreement.   See e.g.,  Schuloff v. Murphy, 159 F.3d 1348 (affirming a decision from the Eastern District of New York that found that the Family Educational Rights and Privacy Act provided a compelling government interests to preclude the plaintiff from revealing the names of students during her testimony before a CUNY Board of Trustees meeting.  The CUNY Board, however, allowed the plaintiff to discuss the matter generally, without revealing the students' names.);  See, e.g., Zapach v. Dismuke, 134 F. Supp. 2d at 694 ("Under clearly established law, the official conducting a public meeting has the right to stop any speaker whose speech became irrelevant, as a valid content-neutral restriction."); Scroggins v. City of Topeka, 2 F. Supp. 2d at 1374 ("the court also finds that the Mayor's judgment call under these circumstances was a reasonable attempt to confine speakers to a relevant topic and to avoid further personal attacks.").  Previously, the Court found that there was a genuine issue of material fact concerning whether the Town did indeed have the policy concerning restricting public comment claimed by Mello, and therefore denied his motion for summary judgment on Piscottano's first amendment claim.  Likewise, Mello may be entitled to qualified immunity depending on his basis for restricting Piscottano's speech and whether either local or state law supported his decisions.  Without more evidence as to whether Mello acted pursuant to a town policy or made unilateral content-based decisions, however, the Court cannot decide qualified immunity.  Although the court is mindful that Mello's decisions are subject to an objective test for evaluating his conduct under qualified immunity, the record is insufficient for making this determination.  Consequently, the Court denies Mello summary judgment on claim of entitlement to qualified immunity from Piscottano's free speech claims.

**VI**      **Conclusion**

The defendants' motion for summary judgment **[Doc. # 24]** is **GRANTED** in part and

**DENIED** in part.

SO ORDERED this 14th day of October 2005, at Hartford, Connecticut.

                 **/s/ CFD**
                 **CHRISTOPHER F. DRONEY**
                 **UNITED STATES DISTRICT JUDGE**